Steven L. Krongold. State Bar No. 125952
**KRONGOLD LAW CORP., P.C.**
8105 Irvine Center Drive, Suite 900
Irvine, California 92618
Phone: (949) 651-1900; Fax: (949) 861-9225

Attorneys for Plaintiffs CLM Properties, Inc.,
Anne J. Mazzella, and Louis Mazzella, Sr.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| CLM PROPERTIES, INC., a New York corporation, ANNE J. MAZZELLA, C/F ANDREW JOHN MAZZELLA UGMA/NY, and LOUIS MAZZELLA, SR., <br><br> Plaintiffs, <br><br> vs. <br><br> SIMMONSCOOPER LLC, an Illinois limited liability company, and LAW OFFICES OF JAMES SOKOLOVE, <br><br> Defendants. | CASE NO.  SA CV 07-848 AHS (ANx) <br><br> **FIRST AMENDED COMPLAINT FOR:** <br><br> **1. BREACH OF FIDUCIARY DUTY;** <br><br> **2. PROFESSIONAL NEGLIGENCE (LEGAL MALPRACTICE);** <br><br> **3. BREACH OF CONTRACT;** <br><br> **4. FALSE ADVERTISING UNDER LANHAM ACT;** <br><br> **5. FALSE ADVERTISING UNDER CALIFORNIA LAW; AND** <br><br> **6. UNFAIR COMPETITION** |

Krongold Law Corp., P.C

-1-
FIRST AMENDED COMPLAINT

COMES NOW, Plaintiffs CLM Properties, Inc., Anne J. Mazzella, and Louis Mazzella, Sr. (Plaintiffs) and allege the following:

### JURISDICTION AND VENUE

1. This Court has personal jurisdiction over defendants pursuant to general jurisdiction principles based in part on defendants' substantial and continuous contacts with California.  Alternatively, the Court has specific jurisdiction over defendants on grounds they have purposefully availed themselves of the privilege of conducting activities in California, the claims arise out of and relate to defendants' forum- related activities, and the exercise of jurisdiction is reasonable.

2. Venue is proper in this judicial district on grounds a substantial part of the events or omissions giving rise to the claims occurred in this judicial district as alleged more fully herein.

### PARTIES

3. Plaintiff CLM Properties, Inc. (CLM) is, and at all times herein mentioned was, a corporation duly organized and existing under the laws of the state of New York, with its principal place of business located at 4 East 64th Street, New York, New York  10021.

4. Plaintiff Anne J. Mazzella (Anne Mazzella) is, and at all times mentioned herein was, an individual residing in the states of California and Florida and the custodian for Andrew John Mazzella under the Uniform Gifts For Minors Act of New York.

5. Plaintiff Louis Mazzella, Sr. (Lou Mazzella) is, and at all times herein mentioned was, an individual residing in the states of California and Florida and the president and majority shareholder of CLM.

6. Defendant SimmonsCooper LLC (Simmons) is, and at all times herein mentioned was, a limited liability company organized and existing under the laws of

Krongold Law Corp., P.C.

-2-
FIRST AMENDED COMPLAINT

the state of Illinois, with its principal place of business located at 707 Berkshire Blvd., East Alton, Illinois  62024.

7.     Defendant The Law Offices of James Sokolove (Sokolove) is, and at all times herein mentioned was, a limited liability company duly organized and existing under the laws of the Commonwealth of Massachusetts, with its principal place of business located at 1340 Centre Street, Suite 102, Newton, MA 02459.  The company was organized on November 2, 2004.  The name was changed on June 22, 2007.  The exact name of the company is LOJS-MA, LLC but will be referred to herein as Sokolove.

## <u>COMMON ALLEGATIONS</u>

8.     From the period 1999 through 2001, Plaintiffs Lou Mazzella on behalf of CLM and Anne Mazzella on behalf of Andrew John Mazzella (collectively, Plaintiffs) purchased and sold securities through broker-dealer Merrill Lynch, Pierce, Fenner & Smith Inc., located at 717 5th Avenue, New York, New York (Merrill Lynch), a member of the New York Stock Exchange (NYSE) and the National Association of Securities Dealers (NASD) both of which are considered Self Regulatory Organizations (SRO).

9.     On May 21, 2002, New York State Attorney General Eliot Spitzer announced that Merrill Lynch agreed to pay $100 million to settle charges of violating state laws governing conflicts of interest and securities fraud.  The settlement required Merrill Lynch to sever the compensation link between research and investment banking divisions that tainted investment advice.  Spitzer made clear, however, that no fund would be created to compensate investors who claimed they lost money due to Merrill Lynch's misconduct, leaving that avenue of redress to class action lawsuits and private arbitration cases.

Krongold Law Corp., P.C.                     -3-

10.    On April 28, 2003, the United States Securities and Exchange Commission (SEC), the NYSE and the NASD jointly announced that following a coordinated investigation Henry Blodget, a former Merrill Lynch managing director and senior research analyst, would be censured and permanently barred from the securities industry, and would make payment of $4 million to settle administrative charges against him.  The regulators charged that, among other things, Blodget aided and abetted violations of the antifraud provisions of federal securities laws and violated SRO rules by issuing fraudulent research reports and publicly touting stocks while privately expressing negative views of the same stocks.  See, *SEC v. Henry M. Blodget*, 03 CV 2947 (WHP) (S.D.N.Y.)

11.    On October 31, 2003, the SEC announced that Merrill Lynch, along with other national securities dealers, had entered into a global settlement of administrative charges relating to research analyst conflicts of interest whereby the firms agreed to pay a total of $894 million in penalties and disgorgement, which included $100 million previously paid by Merrill Lynch to settle state charges plus an additional $118 million.  *SEC v. Merrill Lynch, Pierce, Fenner & Smith Incorporated,* 03 CV 2941 (WHP) (S.D.N.Y.)

12.    Based on the biased research reports, a number of putative class action complaints were filed against Merrill Lynch and Henry Blodget, among others, beginning in July 2001 and continuing through 2003.  These cases were transferred to the Honorable Milton Pollack, Senior United States District Judge, and were coordinated under the caption *In re Merrill Lynch Research Reports Securities Litigation*, 02 MDL 1484 (M/L Research Report Securities Litigation).

13.    On October 13, 2004, United States District Court Judge Shira A. Scheindlin granted class certification for various securities fraud actions filed in connection with certain initial public offerings some of which were underwritten by

Krongold Law Corp., P.C.                                    -4-

Merrill Lynch.  See, In re: *Initial Public Offering Securities Litigation*, Master File No. 21 MC 92 (SAS) (S.D.N.Y.) (IPO Securities Litigation).

14.    In October 2004, while in Newport Beach, California, Plaintiff Lou Mazzella saw television advertisements of Sokolove broadcasted in the state of California which solicited victims of securities fraud by, among other things, stating "if you bought certain stocks from Merrill Lynch, and lost a substantial amount of money in the stock market, you may be entitled to get your money back" and "recently, large brokerage firms were fined $1.4 billion dollars to settle charges of biased research by their analysts…If you suffered significant financial loss in the stock market, it could have been the result of the fraudulent actions of your brokerage firm, and you may be able to get your money back."

15.    The advertisements stated or implied that Sokolove was experienced in handling these types of claims and would act aggressively to maximize recovery for his clients.

16.    The Sokolove advertisements contained false and misleading statements of fact in that (1) Sokolove did not have attorneys experienced in handling securities fraud or securities brokerage cases; (2) Sokolove did not intend to handle the case but instead refer it out; (3) Sokolove failed to disclose prominently that it was acting as a lawyer referral service; (4) Sokolove failed to disclose that only lawyers who paid a fee were included in the referral network; and (5) Sokolove failed to disclose that the lawyers who handled the case would share the fees with Sokolove for making the referral.  Additionally, Sokolove had no basis for representing that people who lost money in the stock market "may be entitled to get their money back."

17.    In response to seeing the advertisement, Lou Mazzella asked his son, Louis Mazzella, Jr., to call Sokolove.

18.  On October 7, 2004, at 10:49 a.m. EST, Louis Mazzella, Jr. contacted Sokolove.  Lou Mazzella, Jr. was referred to the Simmons Firm, which was described as an affiliate or partner of Sokolove, and "highly experienced" in handling disputes with securities brokers like Merrill Lynch.

19.  In a letter dated October 12, 2004, sent to Lou Mazzella, Simmons touted itself as "an aggressive firm--committed to protecting the rights of victims and their loved ones--with years of experience in the fight against negligent companies and industries."

20.  In its website, Simmons stated that it has a "team of experienced attorneys that can handle your case and help you navigate the complicated financial world of securities litigation."  Simmons further claimed to have "significant experience in prosecuting securities fraud claims and are well equipped to handle your case professionally and confidentially."

21.  The Simmons website contained false and misleading statements of fact in that Simmons did not have a "team of experienced attorneys" with "significant experience in prosecuting securities fraud claims" or in handling disputes with securities brokers like Merrill Lynch.  In truth, Simmons had only one attorney with securities fraud/brokerage litigation experience at the time the statements were made, Christopher N. Messina.

22.  After receiving the October 12, 2004 letter, Lou Mazzella, in Newport Beach, California, saw the information posted on the Simmons website.

23.  Based on all the information he had received, Lou Mazzella on behalf of Plaintiffs entered into a Contract of Representation with defendants Simmons and Sokolove to evaluate and prosecute claims of broker misconduct against Merrill Lynch (2004 Contract).  The scope of potential claims was not limited to analyst conflicts of interest but included the entire panoply of broker negligence and/or fraud claims, including churning or excessive trading, unsuitability,

Krongold Law Corp., P.C.                    -6-

misrepresentations or omissions of material facts, failure to supervise, unauthorized trading, and breach of contract.

24. Beginning in October 2004, and continuing thereafter, Plaintiffs provided defendants with requested documentation, including monthly statements from Merrill Lynch for the periods 1998 through 2002.

25. On January 4, 2006, after a delay of 14 months, defendant Simmons on behalf of itself and Sokolove sent Lou Mazzella a letter refusing to prosecute the action against Merrill Lynch.  During the 14-month time period, defendants took no action to protect the interests of Plaintiffs, including but not limited to:

    (1) initiating an arbitration claim against Merrill Lynch;

    (2) opting out of M/L Research Report Securities Litigation;

    (3) submitting proofs of claim against Merrill Lynch;

    (4) filing a state or federal lawsuit against Merrill Lynch; or

    (5) negotiating a settlement with Merrill Lynch.

26. On January 26, 2006, after repeated requests for an explanation for its decision, Simmons sent Lou Mazzella a letter stating that it did not feel the firm could bring a "viable suitability claim" against Merrill Lynch.  The letter failed to mention whether the firm investigated any other claims.

27. At the time Lou Mazzella received the January 4 letter, he was scheduled to undergo eye surgery, followed closely thereafter by surgery on both knees.  The sudden termination of representation by defendants left Plaintiffs in a precarious situation.

28. As a direct and proximate result of the 14-month delay, Plaintiffs were unable to submit proofs of claim in connection with proposed class action settlements against Merrill Lynch or to opt out of proposed class actions settlements.

29.   As a direct and proximate result of the 14-month delay, Plaintiffs were barred from recovering damages through private arbitrations or lawsuits in state or federal courts due to the expiration of the applicable statutes of limitations.

30.   As a direct and proximate result of the 14-month delay, Plaintiffs were unable to negotiate a private settlement or mediation of their disputes with Merrill Lynch.

## FIRST CLAIM FOR RELIEF

(Breach of Fiduciary Duty; Against All Defendants)

31.   Plaintiffs reallege and incorporate by this reference Paragraphs 1 through 30, inclusive, of this Complaint as if fully set forth herein.

32.   From on or about October 2004 through January 4, 2006, Plaintiffs and Defendants entered into an attorney-client relationship under which defendants owed Plaintiffs a duty to act with the utmost good faith and due care with respect to its evaluation of potential claims against Merrill Lynch.

33.   On January 4, 2006, defendants, and each of them, breached the fiduciary duties owed to Plaintiffs as alleged herein.

34.   As a direct and proximate result of said breach, Plaintiffs have suffered damages in a sum of not less than $1 million dollars, the exact amount of which will be determined according to proof at trial.

35.   The foregoing conduct by Defendants, and each of them, was willful, fraudulent, malicious and oppressive.  Consequently, Plaintiff is entitled to an award of punitive damages against Defendants according to proof.

Krongold Law Corp., P.C.                    -8-
FIRST AMENDED COMPLAINT

## SECOND CLAIM FOR RELIEF

(Professional Negligence (Legal Malpractice); Against All Defendants)

36.    Plaintiffs reallege and incorporate by this reference Paragraphs 1 through 35, inclusive, of this Complaint as if fully set forth herein.

37.    From on or about October 2004 through January 4, 2006, Plaintiffs and Defendants entered into an attorney-client relationship under which defendants undertook to perform legal services for Plaintiffs with respect to its evaluation of potential claims against Merrill Lynch.

38.    From on or about October 2004 through January 4, 2006, defendants, and each of them, failed to use reasonable care and skill in handling the legal services performed on behalf of Plaintiffs as alleged herein.

39.    As a direct and proximate result of said breach, Plaintiffs have suffered damages in a sum of not less than $1 million dollars, the exact amount of which will be determined according to proof at trial.

40.    Upon information and belief, Plaintiffs allege that had defendants used proper care and skill, Plaintiffs would not have suffered the damages alleged herein.

## THIRD CLAIM FOR RELIEF

(Breach of Contract; Against All Defendants)

41.    Plaintiff realleges and incorporates by this reference Paragraphs 1 through 30, of this Complaint as if fully set forth herein

42.    The 2004 Contract obligated defendants to evaluate potential claims against Merrill Lynch, including but not limited to, damages caused by analyst conflicts of interest, churning or excessive trading, unsuitability, misrepresentations or omissions of material facts, failure to supervise, unauthorized trading, failure to follow SRO regulations, and breach of contract.

43.    Plaintiffs duly performed all covenants, conditions and obligations on their part under the 2004 Contract.

Krongold Law Corp., P.C.                    -9-
FIRST AMENDED COMPLAINT

44.    On January 4, 2006, defendants and each of them breached the 2004 Contract as alleged herein.

45.    As a direct and proximate result of the breaches alleged herein, Plaintiff suffered, and will continue to suffer, damages in a sum according to proof at trial.

### FOURTH CLAIM FOR RELIEF

(Lanham Act Violation; Against Defendant Sokolove)

46.    Plaintiff realleges and incorporates by this reference Paragraphs 1 through 30, of this Complaint as if fully set forth herein.

47.    Section 43(a) of the Lanham Act provides, in pertinent part that: Any person who, on or in connection with any goods or services ... uses in commerce ... any ... false or misleading description of fact, or false or misleading representation of fact, which- . . . . (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.  See 15 U.S.C. § 1125(a) (1).

48.    The acts of Sokolove, as alleged herein, particularly the act of sending advertisements into the state of California soliciting victims of fraud, a vulnerable group, using the Internet, radio and television that contained false and misleading statements constitute violations of the Lanham Act.

49.    More particularly, the statements made or implied by Sokolove, as alleged in paragraphs 14 and 15 herein, that the firm offered or could provide competent legal services in recovering money from Merrill Lynch based on bias research reports was literally false or, if literally true, was likely to deceive a substantial segment of its audience, including Plaintiffs and other victims of fraud in California, because at the time it was made Sokolove did not have the ability to offer or provide such legal services.

Krongold Law Corp., P.C.                                -10-
FIRST AMENDED COMPLAINT

50.   In truth, Sokolove was acting exclusively as a lawyer referral service. As alleged herein, Sokolove's advertisements failed to disclose that only lawyers who paid a fee were included in the referral network and Sokolove failed to disclose that the lawyers who handled the case would share the fees with Sokolove for making the referral.

51.   The false and deceptive statements made or implied by Sokolove, as alleged herein, were material, in that the statements were considered important to and influenced Plaintiffs and other victims of fraud in California to contact Sokolove.

52.   Defendant did cause its false and deceptive statements to enter interstate commerce.

53.   As a direct and proximate result of the publication and dissemination of the false and deceptive statements made by defendant, Plaintiffs have been injured in a sum to be proven at the time of trial.  Plaintiffs will request an award of attorneys fees as a prevailing party in this action.

54.   Defendant continues to engage in deceptive advertising. Unless restrained and enjoined by order of this Court, the acts of defendant will cause great and irreparable injury to members of the public.

## FIFTH CLAIM FOR RELIEF

(Lanham Act Violation; Against Defendant Simmons)

55.   Plaintiff realleges and incorporates by this reference Paragraphs 1 through 30, of this Complaint as if fully set forth herein.

56.   The acts of Simmons, as alleged herein, particularly the act of sending advertisements into the state of California soliciting victims of fraud, a vulnerable group, using the Internet that contained false and misleading statements constitute violations of the Lanham Act.

Krongold Law Corp., P.C.

FIRST AMENDED COMPLAINT

57.     The statements made or implied by Simmons, as alleged in paragraphs 19 and 20 herein, that the firm had a team of attorneys experienced in recovering money lost in the stock market, that the firm had a team of attorneys experienced in suing securities brokers, and that the firm had a team of attorneys experienced in handling the type of claims Plaintiffs possessed, were literally false or, if literally true, were likely to deceive a substantial segment of its audience, including Plaintiffs and other victims of fraud in California, since Simmons employed only one lawyer with the required experience.

58.     The false and deceptive statements made or implied by Simmons, as alleged herein, were material, in that the statements were considered important to and influenced Plaintiffs and other victims of fraud in California to contact and retain Simmons.

59.     Defendant did cause its false and deceptive statements to enter interstate commerce.

60.     As a direct and proximate result of the publication and dissemination of the false and deceptive statements made by defendant, Plaintiffs have been injured in a sum to be proven at the time of trial.  Plaintiff will request an award of attorneys fees as a prevailing party in this action.

### SIXTH CLAIM FOR RELIEF

(California False Advertising; Against All Defendants)

61.     Plaintiff realleges and incorporates by this reference Paragraphs 1 through 30, and 47 through 59, of this Complaint as if fully set forth herein.

62.     California's False Advertising Law (California Business & Professions Code Section 17500 et seq.) makes it "unlawful for any person, . . . corporation . . ., or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services . . . or to induce the public to enter into any obligation relating thereto, to make or disseminate . . . before the public in this state,

Krongold Law Corp., P.C.                          -12-
                              FIRST AMENDED COMPLAINT

. . . in any newspaper or other publication . . . or in any other manner or means whatever . . . any statement, concerning that real or personal property or those services . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading . . . ."

63.    The Massachusetts Unfair Competition Statute (Mass. Gen. Laws, Ch. 93A), the Illinois Deceptive Trade Practices (815 ILCS 510/2), and the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505) similarly make it unlawful to disseminate false or misleading advertising to members of the public.

64.    In addition to the general prohibition of false advertising, members of the legal profession, and law corporations such as defendants, are strictly regulated in terms of advertising and solicitation of clients.  Under professional rules of conduct, a lawyer shall not make a false or misleading communication about the lawyer or the lawyer's services.  A communication is considered false or misleading if it contains a material misrepresentation of fact or law, or omits a fact necessary to make the statement considered as a whole not materially misleading.  See, e.g., Massachusetts Rule of Professional Conduct 3:07 and Illinois Rule of Professional Conduct 7.1.

65.    The acts of defendants, as alleged herein, particularly the act of sending advertisements into the state of California to solicit victims of fraud, a vulnerable group, using the Internet, radio and television that contained false and misleading statements about the experience, qualifications, and aggressive representation of its attorneys in securities litigation or disputes with securities brokerages, and the fact Sokolove merely acts as an attorney referral service, constitutes violations of False Advertising Laws of California, Illinois and Massachusetts as well as violation of the professional rules of conduct governing lawyers and law firms in those states.

Krongold Law Corp., P.C.                                    -13-

66.    Plaintiff is entitled to restitution of any monies obtained by defendants as a direct and proximate result of the aforesaid violations of law and reasonable attorney's fees.

67.    Defendants continue to engage in deceptive advertising. Unless restrained and enjoined by order of this Court, the acts of defendants will cause great and irreparable injury to members of the public.

### SEVENTH CLAIM FOR RELIEF

(California Unfair Competition; Against All Defendants)

68.    Plaintiff realleges and incorporates by this reference Paragraphs 1 through 30, and 47 through 59, inclusive, of this Complaint as if fully set forth herein.

69.    California Business & Professions Code, Section 17500 makes it unlawful for any person to make or disseminate "in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, *including over the Internet*, any statement, concerning that real or personal property or those services, *professional or otherwise*, *or concerning any circumstance or matter of fact connected with the proposed performance* or disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

70.    The wrongful acts of defendants as alleged herein constitute an unlawful, unfair or fraudulent business act or practice pursuant to California Unfair Competition Law (California Business and Professions Code, section 17200 et. seq. ("UCL"), the Massachusetts Unfair Competition Statute (Mass. Gen. Laws, Ch. 93A), the Illinois Deceptive Trade Practices (815 ILCS 510/2), the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505), and each respective state's common law.

Krongold Law Corp., P.C.                          -14-

71. Plaintiff is entitled to reasonable attorney's fees under California Code of Civil Procedure, section 1021.5.

72. Defendants continues to engage in deceptive advertising. Unless restrained and enjoined by order of this Court, the acts of defendants will cause great and irreparable injury to members of the public.

## **PRAYER FOR RELIEF**

1. On the First Claim for Relief, for compensatory and punitive damages according to proof at trial;

2. On the Second Claim for Relief, for compensatory damages according to proof at trial;

3. On the Third Claim for Relief, for direct and consequential damages according to proof at trial;

4. On the Fourth Claim for Relief, for damages and injunctive relief;

5. On the Fifth Claim for Relief, for damages and injunctive relief;

6. On the Sixth Claim for Relief, for injunctive relief;

7. On the Seventh Claim for Relief, for injunctive relief;

8. For costs of suit, including reasonable attorney's fees; and

9. For such other and further relief as the Court may deem just and proper.

DATED: January 29, 2008          KRONGOLD LAW CORP., P.C.


                                 By: _____
                                 Steven L. Krongold
                                 Attorney for Plaintiffs CLM Properties,
                                 Inc., Anne J. Mazzella, and Louis
                                 Mazzella